Paul F. Lazarus
PAUL F. LAZARUS, P.C.
3636 North Central Ave, Suite 790
Phoenix, AZ 85012-1942
State Bar No.: 004511
Telephone: (602) 222-4220
Facsimile: (602) 222-4724
Attorney for Plaintiffs Doe

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| JOHN DOE AND JANE DOE, AS PARENTS OF JOHN DOE 117 AND JOHN DOE 118, <br><br> Plaintiffs, <br><br> vs. <br><br> THE CHICAGO PROVINCE OF THE SOCIETY OF JESUS a/k/a THE JESUITS, an Illinois not-for-profit corporation, and FATHER DONALD J. MCGUIRE, S.J., individually, <br><br> Defendants, | Case No.: <br><br> COMPLAINT <br> (Loss of Filial Consortium, Intentional Infliction of Emotional Distress, Negligence) |

COMES NOW Plaintiffs, John Doe and Jane Doe, and hereby sets forth the following Complaint against Defendants The Chicago Province of the Society of Jesus a/k/a/ The Jesuits, an Illinois not-for-profit Corporation, and Father Donald J. McGuire, S.J., individually.

Plaintiffs John Doe and Jane Doe are the parents of John Doe 117 and John Doe 118. John Doe 117 and John Doe 118 have brought an action in the Illinois State Circuit Court of Cook County, Civil No. 2007L011952, captioned *John Doe 117 and John Doe 118 v. The Chicago Province of the Society of Jesus a/k/a The Jesuits and Father Donald J. McGuire, S.J.* John Doe 117 and John Doe 118 have alleged that they were sexually abused by Defendant Father Donald J. McGuire, S.J., while he was a Priest and member of Defendant The Chicago Province of the Society of Jesus.

- 1 -

## JURISDICTION AND VENUE

1. This Court has diversity jurisdiction over the claims set forth in this Complaint under 28 U.S.C. § 1332(a)(1) as a substantial part of the events or omissions giving rise to the claim occurred in the State of Arizona.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) as the matter in controversy exceeds the sum of $75,000, for each Plaintiff, exclusive of interest and costs, and is between citizens of the State of Arizona and citizens of a foreign state.

## PARTIES

3. Plaintiffs John Doe ("**Plaintiff John**") and Jane Doe ("**Plaintiff Jane**") (collectively, "**Plaintiffs**") are parents of John Doe 117 and John Doe 118 (collectively the "**Children**"). John Doe 117 and John Doe 118 are brothers. The identities of Plaintiffs, as well as the identities of John Doe 117 and John Doe 118, will be made known to Defendant The Chicago Province of the Society of Jesus and Defendant Father Donald J. McGuire, S.J. by separate cover letters. At all material times, Plaintiffs were residents of the State of Arizona.

4. Defendant The Chicago Province of the Society of Jesus, also known as the Jesuits, (the "**Order**"), an Illinois not-for-profit Corporation, was and is a world-wide Roman Catholic religious order of Priests. Defendant Order does business in the state of Illinois, with its principal place of business located at 2050 N. Clark St., Chicago, IL 60614. The Order and its agents and employees were and continue to be responsible for the selection and assignment of clergy, supervision of clergy activities, the exercise of authority over various members of its religious order, and the maintenance of the well-being of its members.

5. Defendant Father Donald J. McGuire, S.J. ("**McGuire**"), at all material times hereto, was a resident of Illinois and member of Defendant Order. McGuire became a member

- 2 -

of Defendant Order in 1947.  He was educated by Defendant Order and subsequently ordained a Jesuit Priest by Defendant Order in 1961.  At all material times, McGuire was under the direct supervision, employ and control of Defendant Order.  McGuire was an adult and designated holy figure at the time of the facts alleged herein.

## GENERAL ALLEGATIONS

6. At all times material to the Complaint, Defendant Order was part of the Roman Catholic Church.

7. Defendant McGuire began his formal training with Defendant Order to become a Priest in 1947.  Defendant McGuire was ordained a Jesuit Priest in 1961 by Defendant Order. Since the time that McGuire began his training, and at all times relevant to this Complaint, Defendant Order has monitored, supervised, trained, counseled, employed or otherwise exercised control over McGuire's secular and non-secular activities.

8. McGuire was a trusted spiritual advisor to Plaintiffs for over 25 years and provided extensive spiritual guidance to Plaintiffs regarding their faith, their marriage, and their Children.  McGuire was a prominent Jesuit leader and a well-known confessor to Mother Teresa of Calcutta.  Plaintiffs were devout Roman Catholics and gave great deference to McGuire and his role in Defendant Order.  Plaintiffs and their Children came to know, admire, trust and respect McGuire as a highly-respected Jesuit Priest, teacher, counselor, confessor, spiritual advisor and religious instructor.

9. Plaintiffs raised their Children in a devout Roman Catholic home, and together they regularly celebrated Mass, received the sacraments, and participated in church-related activities.  Plaintiffs had a trust, reverence, and respect for Roman Catholic Priests, including Defendant McGuire.  Plaintiffs also taught their Children from an early age to have a trust, reverence, and respect for Roman Catholic Priests.  It was through this position of trust, respect

and reverence that Defendant Order and McGuire gained access to Plaintiffs' Children.

10. In 1983, at the behest of McGuire, Plaintiff John accepted a volunteer position to serve as the retreat coordinator for the Phoenix, Arizona area. This position caused Plaintiff John to work closely with McGuire and McGuire became a significant part of Plaintiffs' lives.

11. Between 1988 and 2002, McGuire regularly visited Arizona and stayed overnight in Plaintiffs' home. McGuire baptized three of Plaintiffs' children, including John Doe 118. Moreover, when John Doe 117 was married in 2002, Plaintiffs asked McGuire to conduct the nuptials and pre-marital counseling.

12. Defendant Order learned of McGuire's pedophilic behavior and his propensity to engage in sexual abuse no later than 1969. Defendant Order was aware of incidents of sexual abuse of children by McGuire in 1969, almost two decades before the abuse of Plaintiffs' Children, which began in approximately 1988 (John Doe 117) and 2001 (John Doe 118). Upon information and belief, Defendant Order became aware of multiple instances in which McGuire sexually abused minor boys between 1969 and 1988.

13. Defendant Order had actual knowledge of material facts regarding McGuire's individual pedophile impulses and behavior before he abused Plaintiffs' Children, but failed to act on that knowledge. Despite Defendant Order's knowledge of McGuire's pedophilic behavior no later than 1969, Defendant Order did not remove McGuire from ministry or otherwise restrict his ministry or access to children in any way. Defendant Order did not report McGuire to law enforcement or any other civil authority or otherwise warn its members or the public at large that McGuire posed a significant risk to children. Rather, to avoid scandal, Defendant Order ignored the problem and in fact added to it by representing McGuire as a Priest in good-standing and allowing McGuire to continue in ministry all over the world where he could have access to abuse

children, including Plaintiffs' Children.

14. In approximately 1988, McGuire began sexually abusing John Doe 117. Defendant McGuire recruited and solicited sexual contact with John Doe 117 using the sacrament of the confession and utilized the confessional to further his sexual grooming and exploitation of him. Such abuse occurred in various locations in Arizona, including in Plaintiffs' home, and in Illinois.

15. In or about 1988, when John Doe 117 was approximately 9 years old, McGuire sexually molested him in Plaintiffs' home in Arizona, by forcing John Doe 117 to "Massage" McGuire's naked body, including, but not limited to, McGuire's genital area.

16. In the summer of 1992, when John Doe 117 was approximately 13 years old, McGuire sexually molested him during a religious retreat in Arizona. McGuire's sexual abuse of John Doe 117 took many forms, including, but not limited to fondling and other inappropriate sexual acts by McGuire.

17. In the summer of 1994, when John Doe 117 was approximately 15 years old and while he and his family were visiting Chicago, Illinois, McGuire again sexually molested him in McGuire's residence.

18. Approximately one week after leaving Chicago and returning to Arizona during the summer of 1994, McGuire visited Plaintiffs and their Children in Arizona, and again sexually molested John Doe 117 in a manner consistent with his prior abuse.

19. In addition to the physical acts of sexual abuse described herein, McGuire also showed John Doe 117 pornography and frequently had inappropriate and sexually graphic discussions with John Doe 117, including in the confessional.

20. The sexual abuse of John Doe 117, and the circumstances under which the abuse

occurred, caused John Doe 117 to develop various physical and psychological injuries, including but not limited to, symptoms of psychological distress, great shame, guilt, self-blame, helplessness, confusion, depression, repression, loss of self-esteem, humiliation, loss of enjoyment of life, and loss of religious faith. These injuries significantly diminished the ability of John Doe 117 to give love, affection, comfort, services, society, and companionship to Plaintiffs and substantially interfered with, and continue to substantially interfere with, John Doe 117's capacity to interact with Plaintiffs in a normally gratifying way.

21.   In approximately 2001, when John Doe 118 was 13 years old, Defendant McGuire recruited and solicited sexual contact with John Doe 118 using the sacrament of the confession. McGuire utilized the confessional to further his sexual grooming and exploitation of John Doe 118. Such abuse occurred in various locations in Arizona, including in Plaintiffs' home.

22.   In or about the fall of 2001, John Doe 118 was recruited to act as McGuire's Altar Server when McGuire was in Arizona to conduct retreats and/or saying Mass. During this time, and while visiting the home of members of the faith, McGuire would walk around naked in front of John Doe 118, and force John Doe 118 to "Massage" McGuire's naked body, including his genital area. During this same period, McGuire would touch and grope John Doe 118 in an inappropriate and sexual manner.

23.   In late 2001 or early 2002, McGuire again requested John Doe 118 to be his Altar Server. Again McGuire forced John Doe 118 to "Massage" McGuire's naked body, including, but not limited to his genital area.

24.   During a visit to Arizona in March 2002, McGuire again solicited John Doe 118, by engaging in sexually explicit conversation while viewing and showing John Doe 118

pornographic materials. During this visit McGuire touched John Doe 118 in an inappropriate and sexual manner.

25. The sexual abuse of John Doe 118, and the circumstances under which the abuse occurred, caused John Doe 118 to develop various physical and psychological injuries, including but not limited to, symptoms of psychological distress, great shame, guilt, self-blame, helplessness, confusion, depression, repression, loss of self-esteem, humiliation, loss of enjoyment of life, and loss of religious faith. These injuries significantly diminished the ability of John Doe 118 to give love, affection, comfort, services, society, and companionship to Plaintiffs and substantially interfered with, and continue to substantially interfere with, John Doe 118's capacity to interact with Plaintiffs in a normally gratifying way.

26. As a result of McGuire's sexual abuse of their Children, Plaintiffs were deprived of a normal parent-child relationship with their sons. McGuire's lewd conduct robbed Plaintiffs of their sons' love, affection, comfort, services, society, and companionship, as well as the right of every parent to have the society and companionship of a normal child free from injury caused by the wrongful conduct of another.

27. In addition to the sexual abuse of John Doe 117 and John Doe 118, McGuire engaged in a pattern of conduct to silence the Children and allow for the abuse to continue. To this end, McGuire sought to turn the Children away from Plaintiffs and turn Plaintiffs against each other. This pattern of conduct substantially interfered with the normal parent-child relationship between Plaintiffs and their Children and also caused Plaintiffs extreme emotional distress.

28. To discourage the Children from reaching out to Plaintiffs about the abuse, McGuire told the Children among other things: (a) Plaintiffs would not love them any more if

Plaintiffs knew of the abuse; (b) McGuire said the abuse was a "sexual disorder" and that he was only one who could understand such a defect; and (c) the Children could show their "masculinity," which he specifically challenged during the abuse, by not telling their parents. As a result of McGuire's conduct, the Children did not report the abuse to Plaintiffs and deprived Plaintiffs of the opportunity to comfort and protect their Children.

29.     McGuire also sought to physically distance the Children from Plaintiffs. Under the auspice of providing spiritual guidance, McGuire recommended Plaintiffs send John Doe 117, and later John Doe 118, to boarding school 2,600 miles away in Lancaster, Massachusetts. Following John Doe 117's high school graduation, McGuire also recommended that Plaintiffs require John Doe 117 to move away from his parents and join the military. Plaintiffs accepted McGuire's "spiritual guidance" and acted accordingly, thus further distancing Plaintiffs from their Children.

30.     In order to distract Plaintiffs and prevent them from discovering the sexual abuse of their Children, McGuire sought to destroy Plaintiffs' marital relationship. Under the pretense of providing spiritual counseling, McGuire told Plaintiff Jane that Plaintiff John was a lousy father and a terrible role model for their Children. McGuire also told Plaintiff Jane that he believed Plaintiff John was either having an extramarital affair or abusing drugs. To create further divisiveness between Plaintiffs, McGuire counseled Plaintiff John and told him that allowing his mother-in-law to live with them (following the death of her husband) was detrimental to his marriage and should not be tolerated. McGuire's "spiritual counseling" was intended to cause, and did in fact cause, significant strain on Plaintiffs' marital relationship.

31.     On September 8, 2007, John Doe 117 informed his father that he had been molested by McGuire. Shortly thereafter, Plaintiffs learned that John Doe 118 was also molested

by McGuire. Prior to September 8, 2007, Plaintiffs had no knowledge that either of their Children had been victims of McGuire.

32. Plaintiffs were devastated when they learned their Children had been sexually molested by their most-trusted spiritual advisor, a man Plaintiffs invited into their home and had trusted with their Children. Upon learning of McGuire's lewd and lascivious behavior, Plaintiffs experienced various physical and psychological injuries, including, but not limited to, symptoms of psychological distress, great shame, guilt, self-blame, helplessness, confusion, depression, repression, loss of self-esteem, humiliation, loss of enjoyment of life and loss of religious faith. Moreover, Plaintiffs' marriage was severely strained by the emotional trauma.

### COUNT I:  PLAINTIFFS' LOSS OF FILIAL CONSORTIUM
*DEFENDANT MCGUIRE*

33. Plaintiffs incorporate by reference Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. From approximately 1988 through 1994, while John Doe 117 was at all times a minor, McGuire engaged in the aforementioned unauthorized, harmful and offensive sexual contact upon the person of John Doe 117.

35. As a result of this sexual abuse, John Doe 117 sustained and continues to sustain severe, permanent, and disabling injuries as alleged herein. These injuries substantially interfered with, and continue to substantially interfere with, John Doe 117's capacity to interact with Plaintiffs and Plaintiffs' ability to interact with John Doe 117, in a normally gratifying manner.

36. As a result of this sexual abuse, Plaintiffs have been deprived of a normal parent-child relationship with their son and have been deprived of their son's love, companionship, comfort, affection, society, solace and moral support.

## COUNT II: PLAINTIFFS' LOSS OF FILIAL CONSORTIUM
*DEFENDANT ORDER*

37. Plaintiffs incorporate by reference Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. McGuire sexually abused John Doe 117 for several years while he was a minor child, beginning when John Doe 117 was approximately nine years old.

39. Defendant Order knew or reasonably should have known of McGuire's dangerous and exploitative propensities as a child sexual abuser and/or an unfit agent. Prior to the time that McGuire abused John Doe 117, Defendant Order had actual or constructive notice that McGuire was sexually abusing other minors. By holding McGuire out as a fit agent, Defendant Order was responsible for the supervision, care and physical safety of John Doe 117. As such, Defendant Order owed Plaintiffs a duty to provide for the supervision, care, and physical safety of John Doe 117 in a reasonable manner, including the obligation to inform Plaintiffs of McGuire's known dangerous propensities.

40. As a result of Defendant Order's conduct, John Doe 117 sustained and continues to sustain severe, permanent, and disabling injuries as alleged herein. These injuries substantially interfered with, and continue to substantially interfere with, John Doe 117's capacity to interact with Plaintiffs and Plaintiffs' ability to interact with John Doe 117, in a normally gratifying manner.

41. As a result of Defendant Order's conduct, Plaintiffs have been deprived of a normal parent-child relationship with their son and have been deprived of their son's love, companionship, comfort, affection, society, solace and moral support.

## COUNT III: NEGLIGENCE
*DEFENDANT ORDER*

42. Plaintiffs incorporate by reference Paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. McGuire sexually abused John Doe 117 for several years while he was a minor child, beginning when John Doe 117 was approximately nine years old.

44. By holding McGuire out as a fit agent, Defendant Order was responsible for the supervision, care and physical safety of John Doe 117. As such, Defendant Order owed Plaintiffs a duty to provide for the supervision, care, and physical safety of John Doe 117 in a reasonable manner, including the obligation to inform Plaintiffs of McGuire's known dangerous propensities.

45. Defendant Order knew or reasonably should have known of McGuire's dangerous and exploitative propensities as a child sexual abuser and/or an unfit agent. Prior to the time that McGuire abused John Doe 117, Defendant Order had actual or constructive notice that McGuire was sexually abusing other minors. Despite such knowledge, Defendant Order negligently retained and/or failed to supervise McGuire in his position of trust and authority as a Priest, counselor and teacher, where he was able to commit the wrongful acts against John Doe 117.

46. Defendant Order knew or should have known of the risk of harm presented by McGuire and failed to take appropriate action to prevent McGuire, a known pedophile, from sexually abusing children. Among other things, Defendant Order did not report McGuire to law enforcement or any other civil authority or take any measures to warn or inform its members or the public at large. Defendant Order did not impose any restrictions on McGuire or otherwise prevent McGuire from unsupervised contact with children, including Plaintiffs' Children. Defendant Order breached its duty of care to Plaintiffs by permitting McGuire to be in a position

that allowed him unsupervised access to John Doe 117 and enabled McGuire to sexually abuse John Doe 117.

47.  As a result of Defendant Order's negligent conduct, Plaintiffs sustained and continues to sustain severe, permanent, and disabling injuries as alleged herein.

### COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*DEFENDANT MCGUIRE*

48.  Plaintiffs incorporate by reference Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.  Defendant McGuire preyed upon Plaintiffs' Roman Catholic devotion and took advantage of their faith in order to gain access to John Doe 117.  While perpetrating horrific acts of sexual abuse against John Doe 117, McGuire held himself out to Plaintiffs as a holy man to be emulated.  Plaintiffs trusted McGuire and because of this trust, Plaintiffs unwittingly provided McGuire with the opportunity to sexually abuse John Doe 117.  Defendant McGuire's conduct against Plaintiffs as described herein is extreme and outrageous and goes beyond all possible bounds of decency.

50.  Defendant McGuire knew that there was a high probability that his conduct would inflict severe emotional distress upon Plaintiffs.

51.  Defendant McGuire recklessly disregarded the high probability that his conduct would inflict severe emotional distress upon Plaintiffs.

52.  Defendant McGuire's conduct caused and continues to cause Plaintiffs severe emotional distress and mental anguish.

### COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*DEFENDANT ORDER*

53.     Plaintiffs incorporate by reference Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.     Defendant Order took advantage of Plaintiffs' Roman Catholic devotion and betrayed the pious trust they had in Defendant Order to protect their Children.  Defendant Order wrongfully held out McGuire, a known pedophile, as a Priest in good-standing and placed him in a position where he had unsupervised access to children.  Because Defendant Order represented McGuire as being a Priest in good-standing, Plaintiffs allowed McGuire unsupervised access to John Doe 117, thereby providing McGuire with the opportunity to sexually abuse John Doe 117.  Defendant Order's conduct against Plaintiffs as described herein is extreme and outrageous and goes beyond all possible bounds of decency.

55.     Defendant Order knew that there was a high probability that its conduct would inflict severe emotional distress upon Plaintiffs.

56.     Defendant Order recklessly disregarded the high probability that its conduct would inflict severe emotional distress upon Plaintiffs.

57.     Defendant Order's conduct caused and continues to cause Plaintiffs severe emotional distress and mental anguish.

**COUNT VI:  PLAINTIFFS' LOSS OF FILIAL CONSORTIUM**
*DEFENDANT MCGUIRE*

58.     Plaintiffs incorporate by reference Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     From approximately fall 2001 through spring 2002, while John Doe 118 was at all times a minor, McGuire engaged in the aforementioned unauthorized, harmful and offensive

sexual contact upon the person of John Doe 118.

60. As a result of this sexual abuse, John Doe 118 sustained and continues to sustain severe, permanent, and disabling injuries as alleged herein. These injuries substantially interfered with, and continue to substantially interfere with, John Doe 118's capacity to interact with Plaintiffs and Plaintiffs' inability to interact with John Doe 118, in a normally gratifying manner.

61. As a result of this sexual abuse, Plaintiffs have been deprived of a normal parent-child relationship with their son and have been deprived of their son's love, companionship, comfort, affection, society, solace and moral support.

### COUNT VII:  PLAINTIFFS' LOSS OF FILIAL CONSORTIUM
*DEFENDANT ORDER*

62. Plaintiffs incorporate by reference Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. McGuire sexually abused John Doe 118 for several years while he was a minor child, beginning when John Doe 118 was approximately thirteen years old.

64. Defendant Order knew or reasonably should have known of McGuire's dangerous and exploitative propensities as a child sexual abuser and/or an unfit agent. Prior to the time that McGuire abused John Doe 118, Defendant Order had actual or constructive notice that McGuire was sexually abusing other minors. By holding McGuire out as a fit agent, Defendant Order was responsible for the supervision, care and physical safety of John Doe 118. As such, Defendant Order owed Plaintiffs a duty to provide for the supervision, care, and physical safety of John Doe 118 in a reasonable manner, including the obligation to inform Plaintiffs of McGuire's known dangerous propensities.

65. As a result of Defendant Order's conduct, John Doe 118 sustained and continues to sustain severe, permanent, and disabling injuries as alleged herein. These injuries substantially interfered with, and continue to substantially interfere with, John Doe 118's capacity to interact with Plaintiffs and Plaintiffs' inability to interact with John Doe 118, in a normally gratifying manner.

66. As a result of Defendant Order's conduct, Plaintiffs have been deprived of a normal parent-child relationship with their son and have been deprived of their son's love, companionship, comfort, affection, society, solace and moral support.

## COUNT VIII: NEGLIGENCE
*DEFENDANT ORDER*

67. Plaintiffs incorporate by reference Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. McGuire sexually abused John Doe 118 for several years while he was a minor child, beginning when John Doe 118 was approximately thirteen years old.

69. By holding McGuire out as a fit agent, Defendant Order was responsible for the supervision, care and physical safety of John Doe 118. As such, Defendant Order owed Plaintiffs a duty to provide for the supervision, care, and physical safety of John Doe 118 in a reasonable manner, including the obligation to inform Plaintiffs of McGuire's known dangerous propensities.

70. Defendant Order knew or reasonably should have known of McGuire's dangerous and exploitative propensities as a child sexual abuser and/or an unfit agent. Prior to the time that McGuire abused John Doe 118, Defendant Order had actual or constructive notice that McGuire was sexually abusing other minors. Despite such knowledge, Defendant Order negligently

retained and/or failed to supervise McGuire in his position of trust and authority as a Priest, counselor and teacher, where he was able to commit the wrongful acts against John Doe 118.

71.     Defendant Order knew or should have known of the risk of harm presented by McGuire and failed to take appropriate action to prevent McGuire, a known pedophile, from sexually abusing children. Among other things, Defendant Order did not report McGuire to law enforcement or any other civil authority or take any measures to warn or inform its members or the public at large. Defendant Order did not impose any restrictions on McGuire or otherwise prevent McGuire from unsupervised contact with children, including Plaintiffs' Children. Defendant Order breached its duty of care to Plaintiffs by permitting McGuire to be in a position that allowed him unsupervised access to John Doe 118 and enabled McGuire to sexually abuse John Doe 118.

72.     As a result of Defendant Order's negligent conduct, Plaintiffs sustained and continues to sustain severe, permanent, and disabling injuries as alleged herein.

### COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*DEFENDANT MCGUIRE*

73.     Plaintiffs incorporate by reference Paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.     Defendant McGuire preyed upon Plaintiffs' Roman Catholic devotion and took advantage of their faith in order to gain access to John Doe 118. While perpetrating horrific acts of sexual abuse against John Doe 118, McGuire held himself out to Plaintiffs as a holy man to be emulated. Plaintiffs trusted McGuire and because of this trust, Plaintiffs unwittingly provided McGuire with the opportunity to sexually abuse John Doe 118. Defendant McGuire's conduct against Plaintiffs as described herein is extreme and outrageous and goes beyond all possible

bounds of decency.

75.    Defendant McGuire knew that there was a high probability that his conduct would inflict severe emotional distress upon Plaintiffs.

76.    Defendant McGuire recklessly disregarded the high probability that his conduct would inflict severe emotional distress upon Plaintiffs.

77.    Defendant McGuire's conduct caused and continues to cause Plaintiffs severe emotional distress and mental anguish.

### COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*DEFENDANT ORDER*

78.    Plaintiffs incorporate by reference Paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.    Defendant Order took advantage of Plaintiffs' Roman Catholic devotion and betrayed the pious trust they had in Defendant Order to protect their Children.  Defendant Order wrongfully held out McGuire, a known pedophile, as a Priest in good-standing and placed him in a position where he had unsupervised access to children.  Because Defendant Order represented McGuire as being a Priest in good-standing, Plaintiffs allowed McGuire unsupervised access to John Doe 118, thereby providing McGuire with the opportunity to sexually abuse John Doe 118. Defendant Order's conduct against Plaintiffs as described herein is extreme and outrageous and goes beyond all possible bounds of decency.

80.    Defendant Order knew that there was a high probability that its conduct would inflict severe emotional distress upon Plaintiffs.

81.    Defendant Order recklessly disregarded the high probability that its conduct would inflict severe emotional distress upon Plaintiffs.

- 17 -

82. Defendant Order's conduct caused and continues to cause Plaintiffs severe emotional distress and mental anguish.

## DAMAGES
### *DEFENDANT ORDER AND DEFENDANT MCGUIRE*

83. Plaintiffs incorporate by reference Paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84. Defendant Order and Defendant McGuire's actions and inactions have substantially interfered with, and continue to substantially interfere with, the Children's capacity to interact with Plaintiffs and Plaintiffs' ability to interact with the Children, in a normally gratifying manner. As a direct and proximate result of Defendant Order and Defendant McGuire's actions and inactions, Plaintiffs have been deprived of a normal parent-child relationship with their Children and have been deprived of their Children's love, companionship, comfort, affection, society, solace and moral support. Plaintiffs have suffered and will continue to suffer pain, grief, sorrow, anguish, stress, shock, and mental suffering.

85. As a direct and proximate result of Defendant Order and Defendant McGuire's actions and inactions, Plaintiffs have suffered and will continue to suffer from severe emotional distress and mental anguish, including, but not limited to, symptoms of psychological distress, great shame, guilt, self-blame, helplessness, confusion, depression, repression, loss of self-esteem, humiliation, loss of enjoyment of life, and loss of religious faith.

86. As a direct and proximate result of Defendant Order and Defendant McGuire's actions and inactions, Plaintiffs have incurred and will continue to incur expenses including, but not limited to, psychological treatment, therapy, counseling, and medication.

WHEREFORE, Plaintiffs pray and demand judgment against Defendant Order as follows:

1. For a reasonable and just sum determined by the jury as to general damages, in an amount in excess of $75,000, exclusive of interests and costs, for each Plaintiff, for loss of love, affection, companionship, pain, suffering, and loss of full enjoyment of life experienced and reasonably probable to be experienced in the future in an amount proven at trial;
2. For a reasonable and just sum determined by the jury as to general damages, in an amount in excess of $75,000, exclusive of interest and costs, for each Plaintiff, for Defendant Order's actions which caused Plaintiffs' extreme emotional distress and mental anguish already experienced and reasonably probable to be experienced in the future in an amount proven at trial;
3. For a reasonable and just sum determined by the jury as to general damages, in an amount in excess of $75,000, exclusive of interest and costs, for each Plaintiff for Defendant Order's negligence;
4. For a reasonable and just sum determined by the jury for punitive damages;
5. For medical and related expenses incurred to date and to be hereinafter incurred; and
6. For such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiffs pray and demand judgment against Defendant McGuire as follows:

1. For a reasonable and just sum determined by the jury as to general damages, in an amount in excess of $75,000, exclusive of interests and costs, for each Plaintiff,

for loss of love, affection, companionship, pain, suffering, and loss of full enjoyment of life experienced and reasonably probable to be experienced in the future in an amount proven at trial;

2. For a reasonable and just sum determined by the jury as to general damages, in an amount in excess of $75,000, exclusive of interest and costs, for each Plaintiff, for Defendant McGuire's actions which caused Plaintiffs' extreme emotional distress and mental anguish already experienced and reasonably probable to be experienced in the future in an amount proven at trial;

3. For a reasonable and just sum determined by the jury for punitive damages;

4. For medical and related expenses incurred to date and to be hereinafter incurred; and,

5. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 3rd day of September, 2009.

          PAUL F. LAZARUS, P.C.

          By  s/ Paul F. Lazarus   .
            Paul F. Lazarus
            3636 North Central Avenue, Suite 790
            Phoenix, Arizona  85012
            Attorney for Plaintiffs Doe